IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DARRIN F.W., | CV 20–108–M–DWM |
| Plaintiff, | |
| vs. | OPINION & ORDER |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's denial of benefits is affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if his impairments are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

2

In determining disability, the ALJ follows a five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v). The process begins, at the first and second steps, "by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.* "If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functioning capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." *Id.* At step five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1098. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

## BACKGROUND

Plaintiff's quest for Social Security benefits has been ongoing for over a decade. On August 31, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. 42 U.S.C. §§ 401–33; AR 77–79. He alleged disability beginning August 15, 2009. AR 77, 1356. His claim was initially denied on December 20, 2011, AR 163–175,

3

and upon reconsideration on July 6, 2012, AR 176–92. Plaintiff filed a written request for hearing, AR 41–42, which was held by tele-video on July 9, 2013, by Administrative Law Judge ("ALJ") Michael A. Kilroy, *see* AR 80–162. Plaintiff testified, as did psychological expert Thomas Atkin, and vocational expert Mark Schwager. *See id.* Plaintiff was represented by an attorney. *Id.*

On August 29, 2013, the ALJ issued a decision denying benefits. AR 20–34. On September 27, 2013, Plaintiff filed a request for review of the ALJ's decision. AR 15–16. On November 4, 2014, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision was made final. AR 5–7. On December 16, 2015, this Court, pursuant to a stipulation by the parties, reversed and remanded the case. *See Webb v. Colvin*, CV 15–02–M–JCL (Doc. 21.) That order required the ALJ to reevaluate the opinion evidence, including Dr. Lynn Johnson's opinion, reassess Plaintiff's credibility, including lay witness' statements, and re-evaluate Plaintiff's residual functional capacity. AR 1460–61. On October 3, 2017, an ALJ again denied the claim. AR 1479–94. Plaintiff's filed written exceptions to the decision on November 3, 2017. AR 1678–79.

On November 29, 2018, the Appeals Council reversed the November 2017 decision and remanded the case to an ALJ to specifically reevaluate several issues. *See* AR 1505–08. The Appeals Council instructed the ALJ to reevaluate the opinions of Plaintiff's treating providers, particularly the opinions of Dr. Lynn

4

Johnson and Dr. David Bateen. AR 1506. The Appeals Council further instructed the ALJ to reevaluate lay statements from Plaintiff's wife and VA Service Officer Randy Winter. AR 1505, 1507. Plaintiff's symptoms and his residual functional capacity were also to be reassessed by the ALJ on remand. AR 1507.

ALJ Tanya Dvarshkis held a hearing on November 5, 2019 at which Plaintiff was again represented by counsel. *See* AR 1383–1425. On March 19, 2020, the ALJ denied Plaintiff's claims, finding Plaintiff could not demonstrate he was "disabled" since he last met the insured status requirements. AR 1355–72. At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014. AR 1359. She also found Plaintiff has not engaged in substantial gainful activity since August 15, 2009 (the alleged onset date of his disability) through his date last insured: December 31, 2014. AR 1359–60. At step two, the ALJ found Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, osteoarthritis of the left AC joint with impingement, status-post right ankle avulsion fracture, post-traumatic stress disorder ("PTSD"), insomnia, bipolar disorder, and personality disorder. AR 1360. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 1360.

5

At step four, the ALJ determined that, through the date last insured, Plaintiff had a residual functioning capacity ("RFC") to perform as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could lift/carry/push/pull 10 pounds occasionally and less than 10 pounds frequently. He could stand and/or walk 4 hours per 8-hour workday and sit 6 hours per 8-hour workday. He could frequently operate hand controls with his left upper extremity. He could never climb ladders/ropes/scaffolds. He could occasionally climb ramps/stairs. He could occasionally balance, stoop, kneel, and crouch, but never crawl. He had to avoid all exposure to unprotected heights, moving mechanical parts and hazards. He could tolerate occasional exposure to extreme cold and heat, and vibration. Work had to be low stress, defined as having no more than occasional changes in routine work settings and job duties. He could understand, remember, and carry out simple routine tasks and make simple work related decisions. Work could not require high production/pace work, but work could have had a quota as long as he could control the pace of work. He could perform no jobs requiring tandem tasks or cooperation with co-workers for task completion. He could tolerate no interaction with the public as part of job duties, but he could tolerate incidental public contact. He had to alternate positions as follows: he could stand/walk up to 30 minutes at one time, then alternate to sitting for two minutes before resuming standing/walking. He could sit up to 30 minutes at one time, then stand to stretch at the workstation for two minutes before resuming sitting.

AR 1362. Therefore, the ALJ concluded that through the date last insured, Plaintiff was unable to perform any past relevant work. AR 1371. Relying on the testimony from the vocational expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded at step five that, through the date last insured, Plaintiff "would have been able to perform the requirements of representative occupations," including document preparer,

6

toy stuffer, and vial sealer.  AR 1372.  Consequently, the ALJ concluded that

Plaintiff was not disabled through the date of last insured.  AR 1372.

Plaintiff appealed the ALJ's decision to this Court on July 16, 2020. (Doc.

1.)[1]  The Commissioner filed the certified administrative record on December 22,

2020.  (*See* Doc. 15.)  This matter was fully briefed as of April 23, 2021.  (Docs.

19, 20, 21.)

## Analysis

Plaintiff argues that the ALJ erred in three ways: (1) the ALJ improperly

disregarded Plaintiffs' treating physicians at step four; (2) the ALJ improperly

found Plaintiff not credible; and (3) the ALJ improperly rejected the lay testimony

Plaintiff provided.  Plaintiff's second and third arguments are unpersuasive.  And,

the ALJ's specific reasons for giving little weight to Plaintiff's mental health

treatment providers' assessment of his work-related functionality are, for the most

part, supported by substantial evidence in the record.  However, the ALJ failed to

articulate specific and legitimate reasons for rejecting the opinions of Dr. Johnson

and Dr. Bateen.  Ultimately, however, because these errors were harmless, remand

is inappropriate.  In sum, despite a number of errors in the ALJ's explanation of

her decision, the RFC is strangely accommodating of the medical evidence in the

---

[1] The 2020 Appeals Council decision is not included in the administrative record
lodged with the Court.

record, and even included facts the ALJ described as having rejected but that were highlighted by Plaintiff.  Consequently, the ALJ's denial of benefits is affirmed.

## I.      Treating Providers

According to Plaintiff, the ALJ failed to support her findings on the weight owed to the following treating providers with substantial evidence: Dr. Lynn Johnson, Dr. Jason Schmidt, Dr. Mary Kujawa, and Dr. Robert Bateen.  In assessing disability, an ALJ may rely on the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Under the "treating physician rule,"[2] the ALJ is required to give deference to the treating physician as follows:

> As a general rule, a treating physician's opinion is entitled to substantial weight.  Nevertheless, the ALJ need not accept the opinion of a treating physician.  If a treating physician's opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. But if the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record.  The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

---

[2] The 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017.  *See* 20 C.F.R. § 416.920c(a).  Because this action was filed before March 27, 2017, the treating physicians are owed deference.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted).

Here, the ALJ rejected the treating providers' opinions because they were contradicted by other evidence in the record. *See* AR 1370. Accordingly, in rejecting these opinions, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Ford*, 950 F.3d at 1154. The ALJ was not required to "accept the opinion of any physician, including a treating physician, if that opinion [was] brief, conclusory, and inadequately supported by clinical findings." *Id.* (quotations omitted). Each provider is discussed below.

## A. Dr. Lynn Johnson, Ph.D.

Dr. Johnson saw Plaintiff in January 2011 for a compensation and pension examination for the VA. AR 848–855. Dr. Johnson observed that, during the examination, Plaintiff was "making an effort to represent his symptoms without overstating them." AR 852. Dr. Johnson found that his "[b]ehavior was generally appropriate" during the examination, and she noted that "[h]e had to get up and pace for reasons of back pain or feeling antsy, and eye contact was only fair." AR 852. Dr. Johnson concluded that Plaintiff's PTSD "results in occupational and social impairment that creates reduced reliability and productivity due to such symptoms as frequent panic attacks, difficulty understanding complex commands,

difficulty in establishing and maintaining effective work in social relationships, sometimes impaired judgment." AR 855. She further did not advise Plaintiff work around others "unless he can control his schedule and get sufficient breaks." AR 854. Ultimately, Dr. Johnson determined that Plaintiff's "[p]rognosis should be positive due to reasonably good motivation." AR 855.

The ALJ gave Dr. Johnson's opinion that Plaintiff would experience reduced reliability and productivity minimal weight because "it is inconsistent with records thereafter showing that the claimant attended college in 2012, he interacted with others during class, he led a VA therapy group, and he maintained a 3.5 GPA during college, indicative of the ability to interact, sustain, and concentrate on tasks." AR 1370. The ALJ noted that Plaintiff's "apparent limitations," to the extent Dr. Johnson recognized any, were accommodated in the RFC by limiting Plaintiff's suitable employment to "low stress, simple, isolated tasks." AR 1370.

Plaintiff argues that the ALJ improperly rejected Dr. Johnson's opinion based "on Plaintiff's community college attendance and GPA" without also considering either the accommodations Plaintiff received during his education or the distinctions between college attendance and full-time employment. (Doc. 19 at 9.) In response, the Commissioner does not concede error but essentially argues that any error was harmless because the ALJ's findings and RFC are "consistent with and supported by Dr. Johnson's opinions" so that remand is not necessary.

10

(Doc. 20 at 7.)  Ultimately, Plaintiff is correct that the ALJ erred in failing to articulate sufficient reasons to discredit Dr. Johnson's testimony, but the Commissioner is correct that this error was harmless.

The ALJ's determination that Dr. Johnson's conclusions on Plaintiff's productivity and reliability were entitled to little weight is not supported by substantial evidence.  The ALJ rejected Dr. Johnson's conclusion based on Plaintiff's community college attendance and GPA, but this evidence is consistent with Dr. Johnson's opinion that Plaintiff's prognosis was positive because of his "good motivation," *see* AR 1370 (citing AR 855), and is not necessarily inconsistent with Dr. Johnson's finding that Plaintiff would have reduced reliability.  Moreover, the only evidence in the record that speaks to Plaintiff's academic experience are his transcripts, AR 451–52, and his own testimony, *see, e.g.,* AR 1391, AR 1407.  While Plaintiff's relatively high GPA does show that he has some capacity to concentrate on tasks, consistent with the ALJ's finding, it is not inconsistent with Dr. Johnson's conclusion that Plaintiff would have "difficulty in establishing and maintaining effective work in social relationships, [and] sometimes impaired judgment."  AR 855.

Additionally, as discussed in greater detail below, the ALJ gave Plaintiff's own testimony little weight, but his testimony offers the greatest insight into the social aspect of Plaintiff's academic attendance, and his account of his social

11

interactions is consistent with his reports to medical providers that are documented in the record.  Finally, the ALJ's rejection of Dr. Johnson's opinion is inconsistent with the Appeals Council's finding that "Dr. Bateen's November 19, 2013 opinion is similar in tone and substance to that of Dr. Johnson," AR 1506, and the ALJ attributed "some weight" to Dr. Bateen's 2013 opinion, AR 1369.  Indeed, the ALJ stated she considered Dr. Bateen's assessment that Plaintiff would experience reduced productivity and reliability in the RFC, *see* AR 1368–69, which is directly inconsistent with the ALJ's rejection of Dr. Johnson's similar assessment here.  As discussed further below, the ALJ's conclusion that Dr. Bateen's 2013 report implies that Plaintiff was able to work on a full-time basis is unsupported and is not a legitimate reason to reject Dr. Johnson's opinion.

To show that an ALJ's error was not harmless, a claimant must demonstrate a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  An error is not harmless if it there is a likelihood that the result would have been different. *Id.*  Here, the Commissioner argues the ALJ effectively incorporated Dr. Johnson's opinions into the RFC such that "the ALJ's findings here [are] consistent with and supported by Dr. Johnson's opinions." (Doc. 20 at 7.)  This is correct.  Dr. Johnson opined that Plaintiff should not work closely with others unless he was allowed to control his schedule and take sufficient breaks. The RFC notes that Plaintiff "could perform no jobs requiring tandem tasks or

12

cooperation with co-workers for task completion." AR 1362.  Additionally, though not exactly synonymous with the recommendation that Plaintiff "control his schedule," the RFC indates that Plaintiff's "work could have [] a quota as long as he could control the pace of work."  AR 1362.  Thus, the RFC effectively incorporated Dr. Johnson's opinions, and Plaintiff was not prejudiced by the ALJ's erroneous decision to give them little weight.

Therefore, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Johnson's opinion.  However, because the ALJ effectively included Dr. Johnson's opinions into the RFC and the result would therefore not have been different, the ALJ's error was harmless.

## B. Dr. Jason Schmidt, MD

Dr. Schmidt is a physician at Kalispell Primary Care Clinic who treated Plaintiff for several years.  *See* AR 1284.  In a short letter submitted in November 2012, Dr. Schmidt opined that Plaintiff "struggles with intermittent back pain, which limits his ability to work, and requires occasional time off, or limited work hours, in order to accommodate his physical limitations, please allow him flexibility in his work schedule."  AR 1284.

In January 2013, Dr. Schmidt filled out a checkbox form at the behest of Plaintiff's counsel that asked him to address Plaintiff's potential impairments and restrictions.  AR 1286–88.  In response to the first question, which asked whether

"[Plaintiff] suffer[s] from a combination of physical and mental health impairments . . . that negatively impact[] his ability to obtain or sustain work activity," Dr. Schmidt checked "yes." AR 1286. Dr. Schmidt answered "no" when asked if "there [is] any medical reason to suggest [Plaintiff] is malingering or otherwise not credible in relating his symptoms and limitations." AR 1286–87. He further indicated that Plaintiff's pain was severe enough to interfere with his ability to focus such that he would be off task or inaccurate more than 66% of the time. AR 1287. In response to whether Plaintiff had limited functionality of his hands that would preclude him from "frequent (2/5 of the work day) use of the hands for typing, handling, fingering, sorting, pushing, etc.," Dr. Schmidt noted that "[Plaintiff] is able to do all of the above mentioned tasks without difficulty." AR 1287. Finally, Dr. Schmidt concluded that Plaintiff's physical impairments mean "he cannot perform light or sedentary work on a sustained full-time basis and would miss three or more work days per month." AR 1287.

The ALJ gave little weight to Dr. Schmidt's opinions. She found that "the opinions expressed are quite conclusory, providing very little explanation of the evidence relied on in forming such opinions." AR 1367. The ALJ also noted that, "[i]n addition, the opinions are inconsistent with the claimant's activities of daily living . . . including attending school and performing field practicum work." AR 1367. Plaintiff concedes that Dr. Schmidt's opinions are conclusory, (Doc. 19 at

14

13), but maintains that Dr. Schmidt's opinions should nonetheless have been given greater weight because they are consistent with the record as a whole and consistent with Plaintiff's daily activities. The Commissioner agrees that Dr. Schmidt's opinions are conclusory and argues that the opinions are internally inconsistent as well as inconsistent with the record as a whole and with Plaintiff's reported daily living activities. Ultimately, because of the undisputed conclusory nature of Dr. Schmidt's opinions, the internal inconsistency within Dr. Schmidt's evaluation, and the deference owed to the ALJ's reasonable interpretation, *see Reddick*, 157 F.3d at 720–21, the Commissioner has the better argument.

Internal inconsistences within a treating physician's reports constitute relevant evidence in determining the amount of weight to give that physician's opinions. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Additionally, a treating physician's opinion can be rejected if it is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the parties and the ALJ agree Dr. Schmidt's opinions are brief and conclusory. Additionally, Dr. Schmidt's November 2012 finding that Plaintiff experienced "intermittent" back pain is inconsistent with his finding three months later that Plaintiff was experiencing back pain at a "constant" level. *Compare* AR 1284 *with* AR 1287. Furthermore, though Plaintiff points to "other evidence" that

he contends is consistent with Dr. Schmidt's finding that Plaintiff was in "constant" pain that would prevent him from doing light or sedentary work on a sustained, full-time basis, he is mistaken. Plaintiff argues that Dr. Schmidt's findings are consistent with those of physical therapist Laurie Hilder, but an ALJ need not credit the opinions of physical therapists. *See Roberts v. Berryhill*, 734 F. App'x 489, 490 (9th Cir. 2018) ("Physical therapists are not 'acceptable medical sources.'") (citing SSR 06-03p). Plaintiff also argues that Dr. Schmidt's findings are consistent with the findings of Plaintiff's chiropractor, but this argument fails for similar reasons. First, a chiropractor is not an "acceptable medical source," and so the ALJ "may" consider the chiropractor's opinion but is not required to do so. *Sanfilippo v. Astrue*, 274 F. App'x 551, 553 (9th Cir. 2008) (citing 20 C.F.R. § 404.1513(a), (d)(1)). Second, even if the ALJ credited the chiropractic reports Plaintiff cites, these reports are from 2002 through 2011, *see* AR 720–41, and so do not explain Dr. Schmidt's inconsistency in describing Plaintiff's pain between 2012 and 2013.

Accordingly, the ALJ did not err in giving little weight to Dr. Schmidt's opinions, and specific and legitimate reasons support her decision.

## C. Dr. Mary Kujawa, MD, PhD.

Dr. Kujawa submitted a mental residual functional capacity questionnaire on Plaintiff's behalf in April 2013. AR 1295–99. Dr. Kujawa indicated that she had

been seeing Plaintiff since September 2010, approximately every three to four months.  AR 1295.  She also indicated that Plaintiff could be expected to be absent from work about three days per month.  AR 1299.  She described Plaintiff as "minimally engaged, [with] periodic agitation" and having somewhat reduced attention and concentration.  AR 1295.  But Dr. Kujawa also noted that Plaintiff's prognosis is "fair if [he] were to engage meaningfully and consistently in recommended treatment."  AR 1295.

The ALJ rejected Dr. Kujawa's conclusion that Plaintiff would miss about three days of work per month on the basis that Dr. Kujawa's conclusion was not supported with examination findings, and it was internally inconsistent with "[Plaintiff's] essentially normal mental status examination findings from Dr. Kujawa."  AR 1367.  Additionally, the ALJ noted that Dr. Kujawa's opinion that Plaintiff would miss approximately three days of work per month due to his mental impairments was unsupported by any examination findings.  AR 1367.  Accordingly, the ALJ attributed little weight to Dr. Kujawa's opinions.

Plaintiff argues the ALJ's decision to give Dr. Kujuwa's opinions on the limitations of Plaintiff's mental capacity little weight was erroneous for three primary reasons: (1) the ALJ failed to consider the information on which Dr. Kujawa's opinions were based; (2) Plaintiff's "essentially normal" mental exams were consistent with Dr. Kujawa's opinion; and (3) Dr. Kujawa's opinions were

not inconsistent with Plaintiff's activities. The Commissioner disagrees, though it does not address Plaintiff's final argument. Ultimately, the Commissioner has the better argument.

First, although Plaintiff is correct that Dr. Kujawa indicated that she had been "following" Plaintiff for 3–4 years, AR 1295, Plaintiff overreads the Mental Residual Functional Capacity Questionnaire to provide more information than it truly does. If Dr. Kujawa's answers on the questionnaire had been supported with consistent treatment notes, it likely would have been error for the ALJ to give little weight to the answers on the questionnaire. *Cf. Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes."). Plaintiff's attempts to point to the treatment notes of Janean Earley, with whom Dr. Kujawa apparently coordinated care, AR 1295, for support do not fill the void left by the dearth of Dr. Kujawa's own treatment notes. Ms. Earley's treatment notes speak largely to Plaintiff's dynamics with his family, and to the extent the treatment notes address Plaintiff's ability to work, the remarks are positive and indicate Plaintiff was "making gains" toward his employment. *See* AR 1157–68. Consequently, the ALJ did not err in her assessment that Dr. Kujawa's opinions regarding Plaintiff's prospective absence from employment was unsupported by examination findings.

18

Second, and relatedly, it is not clear that the ALJ erred in concluding that Dr. Kujawa's opinion that Plaintiff would miss three days of work per month due to his mental impairments was inconsistent with Dr. Kujawa's "essentially normal" mental status examination findings. Ms. Earley's treatment notes indicate that Plaintiff did continue to experience PTSD, but also note that his "[i]ntellectual functioning appeared within normal limits." *See* AR 1165. The notes also reflect that Plaintiff "puts a great deal of pressure on [him]self to perform" and that he was looking for options to work at the VA. AR 1159. As the Commissioner notes, even if two reasonable interpretations of the evidence exist, the Court must uphold the ALJ's interpretation so long as substantial evidence supports it. *See Reddick*, 157 F.3d at 720–21. Thus, because Dr. Kujawa did not include an explanation as to why Plaintiff's mental impairments would result in his absence from work three days per month and Ms. Earley's concomitant treatment notes do not support only Plaintiff's arguments, the ALJ did not err in giving Dr. Kujawa's opinions little weight on this ground, either.

Finally, Plaintiff makes a fairly compelling argument that his activities are not inconsistent with Dr. Kujawa's findings. As Plaintiff points out, "Dr. Kujawa did not opine that plaintiff could not withstand the rigors of a one-hour class or a three-hour practicum, but that he would miss more than three days of work per month at a full time job." (Doc. 19 at 18.) The Commissioner does not address

19

this argument.  Thus, the ALJ's explanation that she rejected Dr. Kujawa's opinion on the basis that Plaintiff's activities were inconsistent with Dr. Kujawa's determination that Plaintiff would miss more than three days of work per month is not a legitimate reason to reject Dr. Kujawa's opinion.  Regardless, however, the ALJ did not err in giving Dr. Kujawa's opinion little weight because she did provide two "specific and legitimate reasons that are supported by substantial evidence in the record."  *See Ford*, 950 F.3d at 1154.  Accordingly, there was no error in the ALJ's giving little weight to Dr. Kujawa's opinion.

**D. Dr. David Bateen, PhD.**

Dr. Bateen saw Plaintiff in April 2011 for a compensation and pension examination.  AR 792–96.  He also saw Plaintiff in November 2013.  AR 2361–66.  In 2011, Dr. Bateen noted that he "did not detect any cognitive difficulties" while examining Plaintiff.  AR 792.  Dr. Bateen also noted that Plaintiff "is intellectually capable and should be able to understand, remember, and carry out detailed as well as simple directions under low-stress conditions.  He is limited to work which requires interactions with no more than one or two people at a time."  AR 795.  Dr. Bateen concluded that, while Plaintiff's mental condition limits Plaintiff's "ability to work, he does not appear incapable of all types of employment."  AR 796.

In 2013, Dr. Bateen found that Plaintiff was experiencing depressed mood and anxiety, as well as difficulty in establishing and maintaining effective work

and social relationships and difficulty in adapting to stressful circumstances, including work or a work-like setting.  AR 2365.  Most relevant here, Dr. Bateen concluded that Plaintiff's "psychiatric symptoms would limit his ability to engage in work activities.  He has reduced concentration secondary to his hypervigilance. He would be easily distracted by others.  He would need employment in work settings where he would have no more than brief and superficial contact with others."  AR 2366.  Dr. Bateen concluded that, "[i]n brief, [Plaintiff] is limited to simple, repetitive, low skilled work."  AR 2366.

The Appeals Council specifically directed the ALJ to examine the opinions of Dr. Bateen on remand.  AR 1506. The ALJ gave Dr. Bateen's 2011 opinion "great weight" because Dr. Bateen "performed a thorough mental status examination" of Plaintiff and because Dr. Bateen's findings were consistent with the record as a whole.  AR 1369.  The ALJ gave Dr. Bateen's 2013 opinion "some weight as it is consistent with the residual functional capacity and the record as a whole."  AR 1369.  In response to the Appeals Council's observation that "Dr. Bateen offered no opinion as to whether the claimant would be able to work on a full-time basis," AR 1506, the ALJ concluded "this omission implies Dr. Bateen felt the claimant would be able to work on a full time basis, with the recommended limitations."  AR 1369.

Plaintiff objects to the ALJ's weighing of Dr. Bateen's opinion on the grounds that "the ALJ failed to account for Dr. Bateen's opinion that Plaintiff has 'reduced reliability and productivity,' that he has hypervigilance and that in the *workplace* [he] can only interact with 'one or two people at a time.'" (Doc. 19 at 19 (citing AR 1369, 795).) Plaintiff argues that the "ALJ also erroneously assumed without evidence that Dr. Bateen intended to convey that Plaintiff is capable of full-time work." (*Id.*) The Commissioner generally agrees that the ALJ incorporated all of Dr. Bateen's opined limitations into the RFC, but does not address Plaintiff's argument that the ALJ incorrectly assumed that Plaintiff was capable of full-time work.

First, while the Commissioner correctly observes "[a]n ALJ's residual functional capacity finding need not be identical to any particular medical opinion, so long as it is consistent with opinions that the ALJ purported to accommodate," (Doc. 20 at 5 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010)), the ALJ must nonetheless accurately incorporate into the RFC the medical opinions on which it purports to rely, *see Turner*, 613 F.3d at 1223. Here, the ALJ indicated that she afforded "great weight" to Dr. Bateen's opinion and included all of the "alleged limitations" in the RFC. AR 1369. The RFC included the limitation that Plaintiff "could perform no jobs requiring tandem tasks or cooperation with co-workers for task completion. He could tolerate no interaction

22

with the public as part of job duties, but he could tolerate incidental public contact." AR 1362.  While this language is not identical to Dr. Bateen's opined limitation that "[Plaintiff] is limited to work which requires interactions with no more than one or two people at a time," AR 795, it incorporates the essence of Dr. Batten's opinion that Plaintiff's work could not involve regular or high-volume social interactions.

Plaintiff's second argument—that the ALJ erred in concluding that Dr. Bateen's silence as to whether Plaintiff could work in full-time employment indicates that Dr. Bateen believed Plaintiff could—is a closer question.  The ALJ stated that Dr. Bateen's failure to offer an opinion as to whether Plaintiff "would be able to work on a full time basis" implies that the felt Plaintiff could do such work.  AR 1369.  But the ALJ provided minimal reasoning for this conclusion and, in fact, the scant reasoning is similar to the reasoning the Appeals Council previously rejected.  In the ALJ's 2017 decision on Plaintiff's disability determination, the ALJ concluded that Dr. Bateen's 2013 assessment was "consistent with the residual functional capacity and the record as a whole."[3]  AR 1506.  In rejecting the ALJ's consideration of Dr. Bateen's assessments, the Appeals Council emphasized that the ALJ's conclusions did not adequately take

---

[3] The 2017 ALJ decision is not included in the administrative record lodged with the Court.  (*See generally* Doc. 15.)

into account Dr. Bateen's statements concerning Plaintiff's limited social

functioning, and the RFC did not reflect that Plaintiff could "have no more than

very brief and superficial contact with others." AR 1506. Similarly, the RFC here

that the ALJ found consistent with Dr. Bateen's opinions stated that Plaintiff

"could perform no jobs requiring tandem tasks or cooperation with co-workers for

task completion. He could tolerate no interaction with the public as part of job

duties, but he could tolerate incidental public contact." AR 1362. The ALJ cited

to the RFC as a rationale for concluding that Dr. Bateen must have felt that

Plaintiff would be able to work on a full-time basis. AR 1369.

While the ALJ's current RFC does more to acknowledge Dr. Bateen's

opinion that Plaintiff could not work with more than one or two people, the RFC

does not help answer the question of whether Plaintiff would be able to work on a

full-time basis. Dr. Bateen's opinion speaks to the kind of limitations Plaintiff

should have in a workplace, but it says nothing about the amount of time Plaintiff

could spend in that workplace. The ALJ's unsupported inference was therefore

made in error, and it did not properly address the question the Appeals Council

specifically directed the ALJ to answer on remand.

But, while the ALJ erred in failing to properly consider and assess Dr.

Bateen's opinions, the error is harmless. The ALJ's conclusion that Plaintiff could

work full-time is supported by the findings from other providers in the record. The

24

ALJ's failure to point to those providers in support of her conclusion was in error but would not have altered the result here.  Consequently, the ALJ's error was harmless.

## II.   Plaintiff's Credibility

Plaintiff next argues that the ALJ improperly rejected his testimony because she failed to "link" the rejected portions of Plaintiff's testimony to specified portions of the record.  According to Plaintiff, the ALJ "simply summarized some of the medical evidence, paraphrased the Plaintiff's testimony, and then rejected Plaintiff's unspecified allegations by engaging in the general rejection of Plaintiff's credibility." (Doc. 19 at 21.)  In making this argument, Plaintiff relies on *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015), where the Ninth Circuit held the ALJ committed legal error when the "ALJ failed to identify the testimony she found not credible, [and] she did not link that testimony to the particular parts of the record supporting her non-credibility determination."  The Commissioner responds that the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's testimony, and that *Brown-Hunter* is inapposite because the ALJ "clearly outlined Plaintiff's allegations and then provided an extensive discussion of the evidence that was inconsistent with those allegations." (Doc. 20 at 18.)

Where a claimant does not show evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing.  *Valentine v.*

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Id.* (internal quotation marks omitted). Additionally, the Court is limited to review of the reasons expressly provided by the ALJ, and it may not make inferences—even if such inferences are supported by the record—to support the ALJ's credibility determination if those inferences were not articulated by the ALJ below. *Brown-Hunter*, 806 F.3d at 494.

> Here, the ALJ noted that

> Treatment notes in the record do not sustain [Plaintiff's] allegations of disabling conditions. The credibility of [Plaintiff's] allegations is weakened by inconsistencies between his allegations and the medical evidence. For example, although he alleges that he is unable to perform any work, he was able to perform field practicum work and complete an associate's degree in human services, earning a 3.52 GPA. In addition, although he alleges difficulty relating to others, he was able to greet clients, make phone calls and set appointments during his work-study program.

AR 1370. The Commissioner makes further arguments that "the ALJ also found that Plaintiff's noncompliance with treatment detracted from his claims, as did evidence showing that treatment significantly improved his systems." (Doc. 20 at 14 (citing AR 1365–66).) The portion of the ALJ's decision cited by the Commissioner does provide an overview of the mental health treatment notes from Plaintiff's providers, but the ALJ does not link that part of the record to any part of

Plaintiff's testimony.  *See* AR 1365–66; *cf. Brown-Hunter*, 806 F.3d at 494.

Consequently, the probative question is whether the ALJ's above explanation

provides sufficiently clear and convincing reasons to discredit Plaintiff's

testimony.  It does.

Although not a model of thoroughness, the ALJ's reasoning here is

sufficient to support her finding that Plaintiff was not credible.  The ALJ did more

than merely recite Plaintiff's medical history and provide non-specific conclusions.

*Contra Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  Unlike the

"boilerplate" language in *Lambert*, *id.* at 1270, the ALJ identified portions of

Plaintiff's testimony that she found not credible and pointed to the evidence that

she found more compelling.  For example, the ALJ rejected Plaintiff's testimony

related to his inability to do any work based on the fact that Plaintiff successfully

attended school and completed a practicum, and she likewise discredited Plaintiff's

testimony about the severity of his social impairments based on the fact that he

interacted with clients in that environment.  This explanation is sufficient to

discredit Plaintiff's testimony about his social functioning and purported inability

to do any work, but notably the ALJ did not find that Plaintiff was not credible as it

related to the accommodations he required in both the education and workplace

environments.  Accordingly, the ALJ erred in failing to credit Plaintiff's

allegations about the extent of his necessary accommodations.  Thus, that

27

testimony may be considered, and it is consistent with Dr. Johnson's opinion that Plaintiff would need accommodations and regular breaks during a workday.

However, even considering Plaintiff's testimony about his need for accommodations, the ALJ's error in not expressly crediting that testimony is harmless because such accommodations were nevertheless accounted for in the RFC. For example, Plaintiff stated he needed accommodations including the "ability to stand and use a different chair to sit in while in class." AR 163. The RFC includes a limitation that Plaintiff be able to alternate positions between sitting and standing or walking at least every thirty minutes. AR 1362. Additionally, Plaintiff stated that he was able to take intermittent breaks throughout the day while attending school, AR 1363, and the RFC includes a limitation that Plaintiff be able to control the pace of his work, AR 1362. Thus, while it was error for the ALJ not to credit Plaintiff's testimony regarding his accommodations, this error was harmless.

### III.   Lay Testimony

Plaintiff clearly objects to the ALJ's rejection of Plaintiff's wife's testimony and vaguely challenges the ALJ's rejection of Veterans Services Officer Randy Winter's testimony. (*See* Doc. 19 at 27.) Plaintiff argues that the ALJ failed to provide germane reasons for rejecting the testimony from both sources. In response, the Commissioner argues that the ALJ was required to give only one

germane reason for rejecting the lay testimony, and the ALJ satisfied that requirement.  The Commissioner is correct.

"If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [a claimant's] condition." *Id.* at 1918–19.  Thus, an ALJ who rejects a spouse's observation may not rely on characteristics common to all spouses in order to reject that observation.  *See Valentine*, 574 F.3d at 694 ("[I]nsofar as the ALJ relied on characteristics common to all spouses, she ran afoul of [] precedents.").

## A.    Plaintiff's Wife

The ALJ provided three primary reasons for rejecting Plaintiff's wife's testimony: (1) she was not medically trained so her impressions about the symptoms, frequency, or intensity of Plaintiff's alleged ailments was "questionable"; (2) she was not a disinterested party; and (3) her opinions were inconsistent with the medical evidence.  AR 1367–68.  Similarly, the ALJ rejected Winter's testimony on the grounds that his observations "appeared based on subjective reports from the claimant" and were inconsistent with objective medical evidence in the record.  AR 1368.

29

Here, the ALJ's first reason for rejecting Plaintiff's wife's testimony is not convincing. The ALJ stated that Plaintiff's wife's lack of medical training cast doubt on her observations. This conclusion contravenes the principle that "[a]n eyewitness can often tell whether someone is suffering or merely malingering" and "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to who an impairment affects a claimant's ability to work." *Dodrill*, 12 F.3d at 919 (internal quotation marks omitted). Neither of the letters submitted by Plaintiff's wife offer observations that are "medical" in nature; rather, the letters include observations of Plaintiff in his interactions with friends and family, *see* AR 438, and observations about Plaintiff's hygiene habits, ability to do housework, and sleeping habits, *see* AR 342–49. The fact that Plaintiff's wife was not "medically trained" did not render her unqualified to give her opinions on Plaintiff's abilities that she observed for 16–20 hours a day. AR 340. Furthermore, under *Dodrill* and *Valentine*, the ALJ's second reason for rejecting Plaintiff's wife's testimony—that she was not a "disinterested party" as a result of her relationship to Plaintiff—is not a proper consideration. *See Valentine*, 574 F.3d at 964.

However, the ALJ's final reason for discounting Plaintiff's wife's testimony is germane. Specifically, the ALJ explained that she rejected Plaintiff's wife's testimony because the wife "noted [Plaintiff] could not be around other people or

communicate effectively, and this is quite inconsistent with [Plaintiff] completing his college degree and leading a men's therapy group during the period at issue." AR 1368. There is evidence in the record that providers consistently rated Plaintiff's ability to communicate as "fair," and the fact that he was a part of a men's therapy group undermines Plaintiff's wife's observation that Plaintiff could not be around other people. Accordingly, the ALJ provided a germane reason supported by substantial evidence in the record for affording Plaintiff's wife's testimony little weight.

**B.    Randy Winters**

The ALJ rejected Randy Winters' testimony because his observations "appeared [to be] based on subjective reports from the claimant, and the objective medical evidence indicates [Plaintiff's] gait was within normal limits." AR 1368. Plaintiff argues that this conclusion was in error because "no evidence supports the [] conclusions that Plaintiff's back pain was 'at best intermittent', that Mr. Winter merely parroted Plaintiff's subjective complaints, and that Winter's statement was not based on direct observation." (Doc. 19 at 27–28.) The Commissioner does not address Plaintiff's argument.

The ALJ pointed to evidence that Plaintiff had a normal gait, was using pain medication rarely, and received a straight leg test that was negative for pain. AR 1368. The ALJ further discounted Winters' opinion on the basis that it seemed to

31

result from Plaintiff's own subjective testimony. AR 1368. However, nothing in Winters' letter regarding Plaintiff indicates that his impressions are based on Plaintiff's own reports of pain. Rather, Winters' letter states that he "noticed" certain behavior, such as that Plaintiff had difficulty filing things in the bottom drawers of filing cabinets, he had difficulty sitting, and his attire was not always appropriate for the office. AR 449. These are observations that Winters could permissibly make based on the amount of time he spent as Plaintiff's supervisor during his work study experience. *See Dodrill*, 12 F.3d at 919 (emphasizing that eyewitness testimony may be credited even where the claimant is found not credible and that, "[w]hile this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight").

Nonetheless, the ALJ's conclusion that Plaintiff's medical records contradicted Winters' opinions is a sufficient reason to discredit those opinions.

## IV.   Conclusion

Based on the foregoing, IT IS ORDERED that Plaintiff's request for remand is DENIED. The Commissioner's decision to deny benefits is AFFIRMED.

DATED this 27th day of September, 2021.

_____
Donald W. Molloy, District Judge
United States District Court

32